Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
Joshua R. Hendrickson, Nev. Bar No. 12225
joshh@thiermanbuck.com
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

Jerry Martin (*Pro Hac Vice* forthcoming)
jmartin@barrettjohnston.com
Seth M. Hyatt (*Pro Hac Vice* forthcoming)
shyatt@barrettjohnston.com
**BARRETT JOHNSTON MARTIN & GARRISON, LLC**
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASSES

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL WANG, On Behalf of HIMSELF and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RELIANT REHABILITATION HOLDINGS, INC. d/b/a RELIANT REHABILITATION, RELIANT PRO REHAB, LLC d/b/a RELIANT REHABILITATION, RELIANT MANAGEMENT GROUP, LLC d/b/a RELIANT REHABILITATION, and H.I.G. CAPITAL, L.L.C.<br><br>Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>1) Failure to Pay Overtime in Violation of 29 U.S.C. § 207;<br><br>2) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250;<br><br>3) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016;<br><br>4) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018; and<br><br>5) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050.<br><br>**JURY TRIAL DEMANDED** |

- 1 -
COLLECTIVE AND CLASS ACTION COMPLAINT

COME NOW Plaintiff MICHAEL WANG ("Plaintiff"), on behalf of himself and all other similarly situated and typical persons, and alleges the following:

All allegations in this Complaint are based upon information and belief except for those allegations that pertain to the Plaintiff named herein and his counsel. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction over the state law claims alleged herein because the amount in controversy exceeds $15,000 and a party seeking to recover unpaid wages has a private right of action pursuant to the Nevada Revised Statute ("NRS") Chapter 608. *See Neville v. Eighth Judicial Dist. Court in & for County of Clark*, 406 P.3d 499, 502 (Nev. 2017). Plaintiff also claims a private cause of action to foreclose a lien against the property owner for wages due pursuant to NRS 608.050.

2. This Court has jurisdiction over the federal claims alleged herein pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b), which states: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

3. Venue is proper in this Court because one or more of the Defendants named herein maintains a principal place of business or otherwise is found in this judicial district and many of the acts complained of herein occurred in Washoe County, Nevada, which is located within this district.

**PARTIES**

4. Plaintiff MICHAEL WANG is a natural person who was employed by Defendants from on or about January 2018 through on or about the end of October 2021 as a non-exempt hourly paid Occupational Therapy Assistant ("OTA") in Reno, Nevada.

5. Defendant Reliant Rehabilitation Holdings, Inc. is a closely held Delaware corporation with its principal place of business at 5800 Granite Parkway, Suite 1000, Plano, TX 75024.

6. Defendant Reliant Rehabilitation Holdings, Inc. employs therapists, including Plaintiff Wang, who provide skilled therapy services at skilled nursing facilities in this judicial district.

7. Defendant H.I.G. Capital, L.L.C., is a private equity investment firm organized under the laws of the State of Delaware, with a principal address at 1450 Brickell Avenue, 31st Floor, Miami, FL 33131. In or around September 2018, H.I.G. Capital, L.L.C. announced in a press release that one of its affiliates had acquired Defendant Reliant Rehabilitation Holdings, Inc., which it described as "a leading provider of therapy services to skilled nursing facilities," also noting that "Reliant has approximately 9,000 employees who currently serve more than 800 facilities in 40 states."

8. Defendant Reliant Pro Rehab, LLC is a Delaware limited liability company with its principal place of business at 5800 Granite Parkway, Suite 1000, Plano, TX 75024. Upon information and belief, Defendant Reliant Pro Rehab, LLC is a wholly owned subsidiary of Defendant Reliant Rehabilitation Holdings, Inc. Defendant Reliant Pro Rehab, LLC employs therapists, including Plaintiff Wang, who provide skilled therapy services at skilled nursing facilities in this judicial district.

9. Defendant Reliant Management Group, LLC is a Delaware limited liability company with its principal place of business at 5800 Granite Parkway, Suite 1000, Plano, TX 75024. Upon information and belief, Defendant Reliant Management Group, LLC is a wholly owned subsidiary of Defendant Reliant Rehabilitation Holdings, Inc. Defendant Reliant Management Group, LLC employs therapists, including Plaintiff Wang, who provide skilled therapy services at skilled nursing facilities in this judicial district.

10. Defendants operate a single enterprise under the name of Reliant Rehabilitation that contracts to provide physical, occupational, and speech language therapy to patients at skilled

nursing facilities. According to Defendants' website, Reliant currently employs more than 9,000 therapists at more than 870 facilities in 40 states, including Nevada.[1]

11. The identity of DOES 1-50 is unknown at this time, and this Complaint will be amended at such time when the identities are known to Plaintiff. Plaintiff is informed and believes that each of the Defendants sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant," "Defendants," or "Reliant" herein shall mean "Defendants and each of them."

## FACTUAL ALLEGATIONS

### A. Defendants' Productivity Requirements

12. Plaintiff Wang and all therapists who worked for Defendants, including those who were Occupational Therapy Assistants like Plaintiff Wang, as well as Speech and Language Pathologists, Occupational Therapists, Physical Therapists, and Physical Therapy Assistants, were required to maintain a 95% productivity rate.

13. Productivity is defined as the amount of time spent providing hands on therapy to patients divided by the total amount of time spent on the clock. For example, if a therapist provided therapy for seven hours and spent an hour doing other tasks, then that therapist's productivity rate that day would be 87.5%. In order to meet a 95% productivity rate in a day with eight recorded hours, a therapist would have to spend 7 hours and 36 minutes providing therapy to patients and only 24 minutes doing other essential tasks. This is an impossibly high productivity rate.

14. Defendants insist upon such impossibly high productivity rates because they are reimbursed for therapy services based upon the amount of time their therapists spend providing therapy to patients. Thus, every minute a therapist spends on the clock but *not* delivering therapy to a patient, is a minute Defendants must pay therapists without being able to receive reimbursement for their work. To reduce payroll costs for such nonbillable time, Defendants have set a productivity rate that can only be achieved through off-the-clock work.

---

[1] *See* https://www.reliant-rehab.com/home/about-us/ (last accessed January 6, 2022).

- 4 -
COLLECTIVE AND CLASS ACTION COMPLAINT

15. In recent years, unrealistic productivity requirements have caught the attention of both regulators and trade associations. For example, the (1) American Occupational Therapy Association, Inc., (2) American Physical Therapy Association, and (3) American Speech-Language-Hearing Association issued a *Consensus Statement on Clinical Judgment in Health Care Settings* "recognizing that therapists need additional time outside of client/patient care to complete their documentation is essential and should be included in any measures of productivity."

**B.      Plaintiff Wang and Other Similarly Situated Employees**

16. As an OTA, Plaintiff Wang worked for Defendants at five different Skilled Nursing Facilities (SNFs) in the greater Reno, Nevada area. He primarily worked at Hearthstone of Northern Nevada but from time to time also worked at the Wingfield Health, Lakeside, Sierra Ridge, and Northern Nevada Veterans Home facilities. During the relevant time period, Defendants had contracts at all five of these facilities to provide skilled nursing services to patients. At each of these facilities, Plaintiff Wang was required to meet a 95% productivity requirement. He was unable to meet this requirement at any of these facilities without working off the clock.

17. As an OTA, Plaintiff Wang was responsible for performing the following work: providing occupational therapy to skilled nursing facility patients; completing all necessary related documentation and other required paperwork; communicating with patients' families about their treatment; transporting some patients to a location for therapy; attending meetings as dictated by Defendants; and performing other duties necessary to perform his job.

18. Defendants paid Plaintiff Wang and other therapists by the hour. At the time of separation from employment, Plaintiff Wang was making $32.64 per hour.

19. Plaintiff Wang and other therapists were regularly scheduled to work 40 hours or close to 40 hours per week, and in order to meet Defendants' demanding productivity requirements, often worked for more than 40 hours per workweek.

20. Defendants required all employees to enter their own time in Defendants' electronic record keeping system. During all times and at all five facilities where Plaintiff Wang

worked, the system Defendants used was the Rehab Optima system, and to Plaintiff's knowledge, this same system was used throughout the company to record therapist and therapy assistant work time.

21. Typically, Plaintiff Wang was scheduled for and worked five days per week and reported that he worked approximately eight hours per day in the Optima time keeping system. In reality, he was working an additional hour per day off the clock on average.

22. For a few months in 2019, Plaintiff Wang worked four days per week but typically reported working about ten hours per day of recorded time in Optima. During that time period, he estimates that he worked approximately 1 hour and 15 minutes each day off the clock. In short, Plaintiff Wang estimates that he worked on average five hours per week off the clock during his tenure as an OTA for Defendants.

23. It was only possible for Plaintiff Wang and other therapists to meet Defendants' productivity requirements by working off the clock or otherwise underreporting their time. Wang and the other therapists were fearful that they would be disciplined or discharged if they did not routinely and regularly meet the 95% productivity requirement. Upon his hiring, Defendants made clear to Plaintiff Wang that meeting the productivity requirement was mandatory and meeting it was a requirement to maintaining his employment. The only way he could meet the requirement was to work off the clock by under reporting his time each day. Based upon his experience, Plaintiff Wang knows that the underreporting of the time spent working was commonplace and widespread amongst his fellow therapists from all disciplines.

24. Plaintiff Wang was required to do substantial work other than providing direct occupational therapy to patients. He was required, for example, to do significant and time-consuming paperwork each day. For example, therapists were required to prepare a "daily note" for every patient they treated. It is integral, indispensable, and legally necessary to the performance of the job of a therapist, and is also essential part of the medical billing process as well. Since it was not uncommon for some therapists to see between 15 and 20 patients per day, these notes were time consuming. The time it takes to prepare these daily notes easily surpasses any non-productive time a therapists is afforded.

25. In addition to documentation and other paperwork, therapists are required to attend regular care conferences that last on average 15 to 30 minutes. These care conferences are integral and indispensable job duties of therapists. The time spent in care conference is non-productive time. There are also weekly meetings to discuss the progress of all patients and these meetings often take 30 minutes which is non-productive. By attending a mandatory 30-minute weekly meeting, a therapist will already have exceeded the amount of non-productive time allowed in an 8-hour workday.

26. Similarly, therapists all have annual continuing education and training that must be completed. At least some of this continuing education and training is performed during working hours and is considered by Defendants to be work-time, but it is not considered to be productive time.

27. Plaintiff Wang also updated family members about a patient's progress, prepared and transported patients to the gym for their therapy sessions, coordinate patients' therapy with the nursing staff and discuss with the nursing staff any relevant patient care issues, and a number of other related tasks throughout the day, which was also not considered productive work time but was required of therapists and an integral and indispensable part of therapists' job duties.

28. Since the start of the COVID-19 pandemic, Plaintiff Wang has also had to spend putting on and taking off personal protective equipment ("PPE") that he has had to wear while providing skilled therapy services to patients, which was also not considered productive work time but was required of therapists and an integral and indispensable part of therapists' job duties.

29. In a regular day, in which Plaintiff Wang recorded eight hours of work (the required 7 hours and 36 minutes providing therapy to patients), it was simply impossible to do all of the other tasks within 24 minutes. In order to meet Defendants' productivity requirements, Plaintiff Wang had no choice but to work off the clock by underreporting his time.

30. Plaintiff Wang was not alone. Other therapists routinely worked off the clock to meet the 95% productivity requirement out of fear that they would lose their jobs.

///

///

31. As a result of the under-reporting of their work time, Plaintiff Wang and other therapists have worked overtime hours (*i.e.*, hours over 40 in a workweek) without being compensated for those hours at one and one-half times their regular rate of pay.

C. **Defendants' Failure To Pay Employees For Hours Worked**

32. Off-the-clock work was the result of Defendants' onerous productivity requirements, which applied to all therapists.

33. As a result, Plaintiff Wang often worked in excess of 40 hours, but he did not get paid for the off-the-clock work. And as a result, Plaintiff Wang did not get any overtime pay when those off-the-clock hours that he worked pushed him over 40 hours in the workweek.

34. For example, during the week of October 10, 2021 to October 16, 2021, Plaintiff Wang worked at the Sierra Ridge Health and Wellness Suites facility, and he recorded and was paid for 40.5 total hours of work. Defendants paid him his regular rate of $32.64 per hour for the 40 regular (i.e., non-overtime) hours he worked that week, and Defendants paid his overtime rate of $48.96 (i.e., 1.5 x $32.64) for the half-hour of recorded overtime that we worked that week.

35. However, Plaintiff Wang also worked approximately five additional hours off the clock that week in order to achieve his required 95% productivity. If Plaintiff Wang had not performed this off-the-clock work, then he would not have been able to complete all of his required non-"productive" job duties and still meet his productivity requirement. With this off-the-clock work, his productivity for the week of October 10, 2021 to October 16, 2021 was 95.06%.

36. Defendants did not compensate Plaintiff Wang at all for the five hours that he worked off the clock that workweek. Accordingly, Plaintiff Wang is owed $48.64 dollars per hour (i.e., 1.5 times his regular hourly rate of $32.64) for all off-the-clock work performed that work week, as plaintiff had already worked more than 40 *recorded* hours that week. Defendants therefore underpaid Plaintiff Wang by $244.80 that workweek (i.e., $48.96 per hour x 5 unrecorded, overtime hours).

37. As a result of these companywide pay practices, Defendants did not pay Plaintiff Wang or other therapists like him their proper overtime compensation for all hours worked over 40 in a workweek.

38. Although these activities directly benefitted Defendants and served its business interests, Defendants did not track the time Plaintiff spent on these activities and did not pay him wages for this work. Thus, Defendants have also failed to maintain accurate records of all time spent working by their therapists as required pursuant to the FLSA.

39. Defendants knew and were aware of this off-the-clock work. Despite knowing that Plaintiffs and other similarly situated individuals were performing work off-the-clock and without compensation, Defendants failed to prevent the performance of such work. Defendants suffered and permitted Plaintiffs to continue doing uncompensated work that they were engaged to perform.

40. In failing to pay proper overtime compensation to Plaintiff Wang and all other similarly situated therapists, Defendants acted knowingly and with reckless disregard of the FLSA.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

41. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

42. Plaintiff brings this action on behalf of himself and all other similarly situated and typical employees as both a collective action under the FLSA and a class action under Nevada wage-hour laws.

### FLSA Class

43. Plaintiff brings this action on behalf of himself and the following **FLSA Class** of similarly situated individuals employed by Defendants:

> A. **FLSA Overtime Class:** All current and former hourly-paid, non-exempt therapists and therapy assistants employed by Defendants at any of their locations during the relevant time period and who were subject to Defendants' productivity policies during any one or more covered workweek.

44. With regard to the conditional certification mechanism under the FLSA, Plaintiff is similarly situated to those he seeks to represent for the following reasons, among others:

   A. Defendants employed Plaintiff as an hourly-paid employee who did not receive his full wages for all the hours that he worked, and, where applicable, his overtime premium pay at one and one-half times the regular rate of pay for all hours worked over forty (40) hours in a workweek.

   B. Plaintiff's situation is similar to those he seeks to represent because Defendants failed to pay Plaintiff and all other FLSA Class Members for all time they were required to work, but with the knowledge, acquiescence and/or approval (tacit as well as expressed) of Defendants' managers and agents.

   C. Common questions exist as to whether Plaintiff and all other FLSA Class Members worked off the clock and without compensation.

   D. Upon information and belief, Defendants employs, and has employed, in excess of 9,000 FLSA Class Members within the applicable statute of limitations.

45. Although Plaintiff and FLSA Collective members may have worked in different locations throughout the relevant period, this action may be properly maintained as a collective because:

   A. Plaintiff and FLSA Collective members were all paid an hourly rate;

   B. Plaintiff and FLSA Collective members worked in excess of 40 hours per week;

   C. Regardless of their location, Defendants did not pay Plaintiff and FLSA Collective members an overtime premium rate of one and one-half times their regular hourly rate for all time worked in excess of 40 hours per week; and

   D. Defendants maintained common productivity policies with respect to Plaintiff and FLSA Collective members, regardless of their location.

46. Defendants knew that Plaintiff and FLSA Collective members performed work that required additional wages and overtime compensation to be paid. Nonetheless, Defendants

operated under a scheme, as described above, to deprive the Plaintiff and FLSA Collective members of wages and overtime compensation.

47. Plaintiff has signed a Consent to Sue form, which is attached as Exhibit A.

### Nevada Classes

48. Plaintiff brings this action on behalf of himself and the following **Nevada Classes** of similarly situated individuals employed by Defendants:

> A. **Nevada Off-the-Clock Class:** All current and former hourly-paid, non-exempt therapists and therapy assistants employed by Defendants at any of their locations within the State of Nevada during the relevant time period and who were subject to Defendants' productivity policies during any one or more covered workweek.
>
> B. **Continuation Wage Class:** All members of the FLSA and/or Nevada Classes who are former employees at any time during the relevant time period alleged herein and who worked for Defendants at one or more Nevada location during the relevant time period.

49. Class treatment pursuant to Rule 23 is appropriate in this case for the following reasons:

> A. <u>The Class is Sufficiently Numerous</u>: Upon information and belief, Defendants employ, and has employed, hundreds, if not thousands, of Class Members within the applicable statute of limitations. Because Defendants are legally obligated to keep accurate payroll records, Plaintiff alleges that Defendants' records will establish the members of the Class as well as their numerosity.
>
> B. <u>Common Questions of Law and Fact Exist</u>: Common questions of law and fact exist and predominate as to Plaintiff and Class Members, including, without limitation: (1) Whether Defendants failed to compensate Plaintiff and members of the Off-the-Clock Class for all the hours they worked; and (2) Whether Defendants failed to pay members of the Continuation Wage Class all their wages due and owing at the time of termination; (3) whether Defendants suffered or permitted Plaintiffs and Class members to work off the clock in order to meet Defendants' productivity requirements.

C. **Plaintiff's Claims are Typical to Those of Fellow Class Members**: Defendants directed, suffered and/or permitted Plaintiff to perform work without compensation; Plaintiff was not compensated his full wages due and owing to him at the time of termination of employment. Because Plaintiff is a victim of all of the wrongs committed by Defendants as all members of the Classes that he seeks to represent, his claims are typical.

D. **Plaintiff is an Adequate Representatives of the Classes**: Plaintiff will fairly and adequately represent the interests of Class Members because Plaintiff is a member of the Classes, he has common issues of law and fact with all members of the Classes, and his claims are typical to other Class Members.

E. **A Class Action is Superior/Common Claims Predominate**: A class action is superior to other available means for the fair and efficient adjudication of this controversy, because individual joinder of all members of the Class is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the expenses and burden of individualized litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

## FIRST CAUSE OF ACTION

**Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207**

(On Behalf of Plaintiff and all members of the FLSA Class Against Defendants)

50. Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

51. 29 U.S.C. Section 207(a)(1) provides as follows: "Except as otherwise provided in the section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged

in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

52. By failing to compensate Plaintiff and FLSA Class Members for all the time they were suffered and/or permitted to work as described above, Defendants have failed to pay Plaintiff and FLSA Class Members overtime for all hours worked in excess of forty (40) hours in a week in violation of 29 U.S.C. Section 207(a)(1).

53. Wherefore, Plaintiff demands for himself and for all others similarly situated, that Defendants pay Plaintiff and FLSA Class Members one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

**Failure to Pay Minimum Wages Pursuant to the Nevada Constitution and/or NRS 608.250**

(On Behalf of Plaintiff and all members of the NEVADA CLASS Against Defendants)

54. Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

55. NRS 608.140 provides that an employee has a private right of action for unpaid wages: "Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his or her employment, and shall establish by decision of the court or verdict of the jury that the amount for which he or she has brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the Plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit."  Plaintiff has made a demand for unpaid wages upon Defendant pursuant to NRS 608.140, but satisfactory payment was not received.

56. Article 15 Section 16 of the Nevada Constitution sets forth the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of this section may not be waived by agreement between an individual employee and an employer. . . .  An employee

claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief.  An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."

57. NRS 608.250 provides the following minimum wage rates to be paid, without discount, to all Nevada employees:

    (a) Beginning July 1, 2019:
    (1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $7.25 per hour worked.
    (2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $8.25 per hour worked.

    (b) Beginning July 1, 2020:
    (1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $8.00 per hour worked.
    (2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $9.00 per hour worked.

    (c) Beginning July 1, 2021:
    (1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $8.75 per hour worked.
    (2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $9.75 per hour worked.

    (d) Beginning July 1, 2022:
    (1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $9.50 per hour worked.
    (2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $10.50 per hour worked.

    (e) Beginning July 1, 2023:

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

(1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $10.25 per hour worked.
(2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $11.25 per hour worked.

(f) Beginning July 1, 2024:
(1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada constitution, $11.00 per hour worked.
(2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $12.00 per hour worked.

58. By failing to compensate Plaintiffs and NEVADA CLASS Members for the time spent engaging in the off-the-clock activities identified above, Defendants failed to pay Plaintiff and NEVADA CLASS Members their minimum wages for all hours worked in violation of the Nevada Constitution and NRS 608.250.

59. As a result of Defendants' productivity policy and practice (as set forth above), Plaintiff and NEVADA CLASS Members were deprived wages at the minimum hourly rate of compensation for hours worked. Indeed, zero dollars per hour is less than the Nevada minimum wage of $7.25 per hour.

60. Wherefore, Plaintiff demands for himself and for all NEVADA CLASS Members that Defendants pay Plaintiff and NEVADA CLASS Members their minimum rate of pay for all hours worked (off the clock work) during the relevant time period alleged herein together with attorneys' fees, costs, and interest as provided by law.

### THIRD CAUSE OF ACTION

**Failure to Pay Wages for All Hours Worked Under Nevada Law**

(On Behalf of Plaintiff and the Nevada Off-the-Clock Class Against Defendants)

61. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

62. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

63. Nevada Revised Statutes ("NRS") 608.016 entitled, "Payment for each hour of work; trial or break-in period not excepted" states that: "An employer shall pay to the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period."

64. Nevada Administrative Code ("NAC") 608.115(1), entitled "Payment for time worked. (NRS 607.160, 608.016, 608.250)" states: "An employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."

65. By failing to compensate Plaintiff and Nevada Off-the-Clock Class Members for all the time they were suffered and/or permitted to work, Defendants failed to pay Plaintiff and Nevada Off-the-Clock Class Members for all hours they worked.

66. Wherefore, Plaintiff demands for himself and for all members of the Nevada Off the Clock Class, the payment of all regular rate wages owed for three years immediately preceding the filing of this Complaint until the date of judgement after trial, together with attorneys' fees, costs, and interest as provided by law.

**FOURTH CAUSE OF ACTION**

**Failure to Pay Overtime Wages for All Hours Worked Under Nevada Law**

(On Behalf of Plaintiff and the Nevada Off-the-Clock Class Against Defendants)

67. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

68. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

69. NRS 608.018(1) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

70. NRS 608.018(2) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

71. By failing to compensate Plaintiff Nevada Off-the-Clock Class Members for all the overtime hours they were suffered and/or permitted to work, Defendants failed to pay Plaintiff and Nevada Off-the-Clock Class Members the overtime premium of one and one-half times their regular rate of pay for all hours worked over 8 hours in a workday and/or 40 in a workweek.

72. Wherefore, Plaintiff demands for himself, and for all members of the Nevada Off the Clock Class Members, payment by Defendants at one and one-half times their regular rate of pay for all overtime pay owed for three years immediately preceding the filing of this complaint until the date of judgement after trial, together with attorneys' fees, costs, and interest as provided by law.

## FIFTH CAUSE OF ACTION

**Failure to Timely Pay All Wages Due and Owing Under Nevada Law**

(On Behalf of Plaintiff and the Continuation Wage Class Against Defendants)

73. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

74. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

75. NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

76. NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

77. NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

78. By failing to pay Plaintiff and all members of Continuation Wage Class for all hours worked in violation of federal and state law, Defendants have failed to timely remit all wages due and owing to Plaintiff and all Continuation Wage Class Members.

79. Despite demand, Defendants willfully refuses and continues to refuse to pay Plaintiff and all members of the Continuation Wage Class.

80. Wherefore, Plaintiff demands 30 days wages under NRS 608.140 and 608.040, and an additional 30 days' wages under NRS 608.140 and 608.050, for all members of the Nevada Continuation Wage Class, together with attorneys' fees, costs, and interest as provided by law.

## JURY DEMAND

Plaintiff hereby respectfully demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore Plaintiff, individually and on behalf of all Class Members and all others similarly situated, pray for relief as follows relating to their collective and class action allegations:

1. For an order conditionally certifying the action under the FLSA and providing notice to all FLSA Class Members so they may participate in the lawsuit;

2. For an order certifying this action as a class action on behalf of the proposed Classes;

3. For an order appointing Plaintiff as the Representatives of the respective Classes and his counsel as Class Counsel;

4. For damages according to proof for regular rate or minimum rate pay, whichever is higher, for all hours worked under both federal and state law;

5. For damages according to proof for overtime compensation for all overtime hours worked under both federal and state law;

6. For liquidated damages;

7. For 60-days of continuation wages;

8. For interest as provided by law at the maximum legal rate;

9. For reasonable attorneys' fees authorized by statute;

10. For costs of suit incurred herein;

11. For pre-judgment and post-judgment interest, as provided by law, and

12. For such other and further relief as the Court may deem just and proper.

DATED: June 7, 2022                THIERMAN BUCK LLP

*/s/ Leah L. Jones*
Mark R. Thierman, Nev. Bar 8285
Joshua D. Buck, Nev. Bar 12187
Leah L. Jones, Nev. Bar 13161
Joshua R. Hendrickson, Nev Bar. 12225

BARRETT JOHNSTON MARTIN & GARRISON, LLC

*/s/ Jerry Martin*
Jerry Martin (*Pro Hac Vice forthcoming*)
Seth M. Hyatt (*Pro Hac Vice forthcoming*

*Attorneys for Plaintiff and the Putative Classes*